**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **RACHEL MARTINEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-24-CV-17-KC** |
| | § | |
| **ABINY GREER and WALGREEN** | § | |
| **CO.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>MEMORANDUM OPINION</u>**

On November 25, 2024, Defendant Walgreen Co. ("Walgreens") filed its Motion for

Summary Judgment ("Motion"), ECF No. 21.  On September 30, 2025, the Court granted the

Motion with a memorandum opinion to follow.  Sept. 30, 2025, Text Order.  The Court now

issues its opinion.

## I.    BACKGROUND

This case involves Plaintiff Rachel Martinez's allegations that her former employer,

Walgreens, discriminated against her because of her age and disability and retaliated against her

because of her request for a reasonable accommodation.  *See* Pet. ¶¶ 52, 56, 58, ECF No. 1-4.

The following facts are undisputed, except where noted.[1]

---

[1] Pursuant to the Court's Standing Order Regarding Motions for Summary Judgment, Walgreens attached
Proposed Undisputed Facts ("PUF") to its Motion.  *See* PUF, ECF No. 21-1.  Martinez attached her
Response to Proposed Undisputed Facts ("RPUF") to her Response.  *See* RPUF, ECF No. 22-1.
Throughout the RPUF, Martinez sometimes impugns the relevance of facts, without disputing their
veracity.  *See, e.g.,* RPUF ¶ 1 ("Plaintiff disputes Defendant's Fact 1 as material . . . there is nothing about
Defendant's Fact 1 that evidences that Defendant did or did not discriminate against Plaintiff in violation
of the Texas Labor Code."); RPUF ¶ 2 ("Plaintiff disputes that Defendant is entitled to judgment as a
matter of law on Defendant's Fact 2.").  In such instances, the Court takes the facts as presented by
Walgreens as true.  They are included in the Background of this Memorandum Opinion, and their
materiality is considered in the Discussion.

### A.    Martinez's Employment History

Walgreens is a major retail pharmacy chain that operates across the United States.  PUF ¶ 1.  Martinez began working at Walgreens in 1994 as a part-time cashier.  *Id.* ¶ 2.  She progressed through various roles over her career, ultimately being promoted to shift lead in November 2018.  *Id.*  In her last three years of employment, from 2020 to 2022, Martinez worked under three different managers: David Montes, Amanda Arrieta, and Gerardo Limon.  *Id.* ¶ 2–3.  Each of these managers rated Martinez a three out of five, "Meeting Expectations," in her annual performance evaluation.  *Id.* ¶ 3.  In 2020, Martinez rated herself as a five, "Outstanding," and in 2021 and 2022 she rated herself as a four, "Exceeding Expectations."  *Id.*

### B.    The October 15 Incident

On Saturday October 15, 2022, Martinez's manager, Gerado Limon, asked her to act as a witness during a coaching meeting with her fellow employee Abiny Greer to address Greer's absences.  *Id.* ¶ 4.  Martinez sat in on the meeting, but did not speak, and Limon spoke with Greer about her absences.  *Id.*  Limon concluded the meeting and left the premises shortly thereafter.  *Id.*

The parties dispute what happened next.  *See* PUF ¶¶ 5–7; RPUF ¶¶ 5–7.  Martinez claims that Greer attacked her without provocation and that she did not argue or fight back.  RPUF ¶ 5; Mot. Ex. B, Dep. Rachel Martinez ("Martinez Dep."), 124:17–22, 97:1–15, ECF No. 21-3.  She specifically claims that Greer followed her into the office and got aggressive.  She then walked out of the office to avoid Greer, which is when Greer called her a "bipolar bitch" and a "ghetto bitch" and got "very aggressive to where [she] thought [Greer] was going to hurt [her]."  Martinez Dep. 97:3–7.  Martinez claims that, at some point during the incident, Greer said, "'I fucking quit.  I've already notified [District Manager Froylan Villanueva].'"  *Id.* 116:13.

Martinez claims that Karla Serrano, another employee, "came in to – restrain [Greer]," *id.* 99:16–22, and "had to – grab [Greer] and push her away from [Martinez]," *id.* 97:11–12. Serrano, according to Martinez, "witnessed at least part" of the incident and was the only other visual witness besides herself and Greer. *Id.* 124:23–25, 125:1–2. Another employee, Alfonso Martinez, who was working at the front cashier, claims to have heard Greer arguing with someone and heard only Greer's raised voice—not Martinez's. Mot. Ex. K, Written Statement Alfonso Martinez ("Alfonso Statement"), ECF No. 21-12.

Walgreens, on the other hand, claims that "an argument ensued between Martinez and Greer, escalating into a shouting match in front of a customer." PUF ¶ 5, Martinez Dep. 96:10–15. While Martinez stated that Greer began the confrontation, *see* Martinez Dep. 97:4–7, Greer stated that Martinez began the confrontation by cornering her and accusing her of taking unauthorized breaks, *see* Mot. Ex. H, Written Statement Abiny Greer ("Greer Statement"), ECF No. 21-9. According to Walgreens, the only other witness to the incident, Serrano, overheard yelling coming from the hallway while she was assisting a customer. PUF ¶ 6; Mot. Ex. J, Written Statement Karla Serrano ("Serrano Statement"), ECF No. 21-11. Serrano went to investigate and saw both Martinez and Greer yelling at each other. Serrano Statement. She "attempted to de-escalate the situation by asking [Martinez] to walk away," but Martinez "continue[d] to provoke [Greer] which resulted in an ongoing argument." *Id.* Serrano also stated that "[t]hey 'BOTH' just kept going back and forth" and that Martinez "kept provoking the situation." *Id.* At one point, Serrano witnessed Martinez tell Greer that she was "gonna need a stronger medication for your anxiety and how about you go drink some more." *Id.* According to Serrano, "[Greer] knew the conversation wasn't getting nowhere so she stopped talking and walked away." *Id.*

3

The parties agree that after the incident, Martinez called Limon and accused Greer of making a "scene" and being aggressive and claimed that she was simply trying to walk away. PUF ¶ 8; RPUF ¶ 8; Mot. Ex. O, Written Statement Gerardo Limon ("Limon Statement") 1, ECF No. 21-16. Martinez claims that in this conversation Limon "told [her] not to worry about it. [Greer] had already quit." Martinez Dep. 113:16–21. It is undisputed that at some point prior to the Monday after the incident, October 17, Greer left a voicemail with Villanueva stating that she was quitting. *See* Mot. Ex. R, HR Report Gerardo Limon ("Limon HR Report"), ECF No. 21-19; Mot. Ex. G, Dep. Gerardo Limon ("Limon Dep.") 47:4–6, 16–23, ECF No. 21-8. Martinez claims that Greer quit during the incident. Martinez Dep. 113:20–21, 114:5–23. For its part, Walgreens claims that she quit before the incident in relation to feedback she received at a "BMH event" the previous weekend. Limon Dep. 45:22–25, 46:1–2; Mot. Ex. N, Dep. Froylan Villanueva ("Villanueva Dep.") 38:21–25, 39:1–2, ECF No. 21-15. At some point prior to October 19, Limon spoke with Greer about not quitting and allowed her to come back to work. *See* Limon Dep. 47:16–19, 48:14; Villanueva Dep. 39:16–24, 40:2–6; Limon HR Report 5.

### C. Investigation and Termination

The Monday after the incident, October 17, Villanueva directed Limon to open a case with HR and collect witness statements. Limon Statement 1; Limon Dep. 57:5–10, 59:25. Limon opened a case with HR on either October 17 or October 18. *See* Limon Dep. 62:14–16; Limon Statement 1; Limon HR Report 5–6. Prior to opening the case and submitting his report, Limon discussed the incident with Villanueva and Serrano. Limon Dep. 37:9–12; Limon Statement 1. Limon testified that although Serrano had told him and Villanueva about Martinez's gross misconduct during the incident, he did not include that in his report because he "had just opened the case" and "had not collected employees' statements." Limon Dep. 59:16,

60:1–2.  Villanueva testified that Limon had spoken to him about both Greer and Martinez being

"unprofessional" with each other during the altercation.  *See* Villanueva Dep. 46:19–25.  After

the three-way call with Villanueva and Serrano, Limon collected witness statements from

Martinez, Greer, Serrano, and Alfonso Martinez.  *See* Limon Statement 1; Limon Dep. 62:14–16.

On October 7, prior to the incident with Greer, Martinez completed the Workplace

Violence for Store Leadership training.  PUF ¶ 10; RPUF ¶ 10; Mot. Ex. L, Training Record 1,

ECF No. 21-13.  The training emphasized the importance of de-escalating conflicts and

maintaining a safe work environment, with directives including "[s]top yourself from reacting in

a way that could further escalate the situation" and "[a]ll employees are required to understand

and comply with this policy."  Mot. Ex. M Workplace Violence Training 4, 10, ECF No. 21-14.

Walgreens' Standard of Conduct – Policy Statement reads:

> In most instances, a team member should not be terminated for a single misdeed or
> failure to work up to standard.  However, team members observed to have serious or
> sustained performance that is below the standards communicated to the team member
> may be subject to progressive discipline, a performance improvement plan, or immediate
> termination.  In addition, some misconduct may justify immediate termination of
> employment.  A non-exhaustive list of examples of conduct for which team members
> may be subject to disciplinary action, up to and including immediate termination, is
> described below . . . Violation of Policy Against Workplace Violence (including but not
> limited to possession of a weapon in the workplace, fighting, and threats or acts of
> violence).

Mot. Ex. U, Policy Statement ("Policy") 1, ECF No. 21-22.

After reviewing the witness statements and consulting with HR, Villanueva determined

that both Martinez and Greer had violated Walgreens' workplace violence policy and engaged in

gross misconduct.  PUF ¶ 11; Villanueva Dep. 12:17–22; Martinez Dep. 95:17–21; Limon HR

Report 4.  On November 3, 2022, Limon terminated Martinez and informed her that her

termination was due to gross misconduct.  PUF ¶ 11; Limon Statement 1; Martinez Dep. 95:17–

21. On the same day, or the day before, Greer was also terminated for gross misconduct. PUF ¶ 11; Limon Statement 1; Martinez Dep. 122:16. Subsequently, Limon wrote a statement describing the incident, the investigation, and the terminations of Martinez and Greer. *See* Limon Statement.

Martinez claims that she was terminated because of her age and disability and retaliated against for requesting an accommodation for her disability. PUF ¶ 12; Martinez Dep. 71:14–16, 94:8–16, 95:2–6. At the time of her termination, Martinez was fifty-four years old. PUF ¶ 13; Martinez Dep. 138:24–25. Martinez claims that she was diagnosed with bipolar I disorder, a mental health condition that impacts her daily life to varying degrees. PUF ¶ 14; Martinez Dep. 19:9–11. Walgreens has no record of Martinez formally requesting an accommodation through its third-party vendor Sedgwick. PUF ¶ 16; Mot. Ex. A, Decl. Froylan Villanueva ("Villanueva Decl.") ¶ 6, ECF No. 21-2. The only accommodation Martinez claims to have requested was not to be transferred to a twenty-four-hour store to work overnight shifts. PUF ¶ 16; Martinez Dep. 77:8–17, 79:1–16. In or around October 2022, Martinez told Limon that she wanted to move up in the company. PUF ¶ 17; Martinez Dep. 75:6–7, 13–25, 76:1–3. A few weeks later, Limon conveyed a message from Villanueva to Martinez, asking if she would transfer to another store to work an overnight shift to gain experience. PUF ¶ 17; Martinez Dep. 74:11–21. Martinez declined Limon's offer and explained that she could not work overnight shifts because of her disability. PUF ¶ 17; Martinez Dep. 77:5–11. Specifically, because she took her medication at night, could not go off her medication regimen, and her medication caused drowsiness. PUF ¶ 17; Martinez Dep. 77:14–17. Martinez was never transferred to a twenty-four-hour store and never worked an overnight shift. PUF ¶ 17; Martinez Dep. 79:3–16.

6

### D.    Procedural History

Martinez filed this lawsuit against Greer and Walgreens in state court on December 6, 2023.  *See* Pet.  She brought an assault claim against Greer.  *Id.* ¶ 50.  And she brought seven claims under the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq. ("TCHRA") against Walgreens.  *Id.* ¶¶ 51–58.  That is, three wrongful discharge claims and three hostile work environment claims, each on age, disability, and retaliation grounds, as well as a claim for failure to accommodate her disability.  *Id.*  On January 16, 2024, Walgreens removed the case.  Notice Removal, ECF No. 1.  On April 4, 2024, the Court dismissed the claims against Greer.  Apr. 4, 2024, Order, ECF No. 8.  Walgreens filed this Motion on November 25, 2024. Martinez filed her Response, ECF No. 22, to which Walgreens filed a Reply, ECF No. 23.

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party, but factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### B.     Martinez's Evidentiary Objections

As a preliminary matter, Martinez makes evidentiary objections to two categories of documents: declarations and contemporaneous employee statements regarding the October 15 incident.

#### 1.     Declarations

Martinez objects to the Declarations of Villanueva and Limon on hearsay grounds, arguing that each "is not a business record and lacks trustworthiness as it appears it was created for purposes of litigation, specifically Defendant's motion for summary judgment." RPUF 1. At summary judgment, evidence offered "need not yet be in a form admissible at trial" so long as the party offering the evidence can "demonstrate that it can be put into an admissible form by the time of trial." *In re Deepwater Horizon*, 48 F.4th 378, 385 (5th Cir. 2022) (citing *Lee v. Offshore Logistical & Transport, L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017)). Martinez does not show that Walgreens would "be unable to introduce the information [she] identif[ies] as hearsay in an acceptable format at trial." *See United Healthcare Servs., Inc. v. Rossel*, No. 21-cv-1547, 2024 WL 4451761, at *9 (N.D. Tex. July 23, 2024), *adopted*, 2024 WL 4326539 (Sept. 27, 2024). Both Villanueva and Limon could almost certainly testify to the contents of their declarations at trial—indeed, both testified regarding many of the same topics in their depositions. *See, e.g.*, Villanueva Dep. 9:13–17:21; Limon Dep. 20:10–64:25, 69:23–70:7. Accordingly, Martinez's hearsay objection is overruled.

#### 2.     Employee Statements

Martinez objects to the statements of Greer, Serrano, and Limon on authentication and hearsay grounds. Again, Martinez's hearsay objection is premature, as she has not shown that Walgreens will be unable to introduce or authenticate the statements in an acceptable format at

trial. The Villanueva Declaration describes the statements as "internal investigation documents," which "are kept by Walgreens in the regular course of business." Villanueva Decl. ¶¶ 3–4. Therefore, Walgreens could likely present a witness, such as Villanueva, to authenticate them. *See, e.g.*, *Esquivel v. Fudge*, No. 22-cv-556, 2023 WL 5658338, at *7 (N.D. Tex. Aug. 31, 2023). Because the Villanueva Declaration "is competent summary judgment evidence, so too are the documents, like [the employee statements], properly authenticated for the purpose of this [summary judgment motion]." *See id.* To the extent Martinez raises a hearsay within hearsay objection as well, there is no basis in the record to doubt that Greer, Serrano, and Limon could all be called to testify at trial regarding their own statements.

In sum, all of the challenged evidence is competent for summary judgment purposes and Martinez's objections are overruled.

### C.    Summary Judgment Analysis

Walgreens argues that it is entitled to summary judgment on all of Martinez's claims. Mot. 3–4, 21–22. In her Response, Martinez "voluntarily abandons her legal theories that Walgreens failed to accommodate her disability and that Walgreens subjected her to a hostile work environment." Resp. 2. Therefore, the Motion is granted in part, and Martinez's failure to accommodate and hostile work environment claims are dismissed. This leaves only Martinez's wrongful termination claims, on age discrimination, disability discrimination, and retaliation grounds.

### 1.    Age Discrimination

The Court analyzes Martinez's age discrimination claim under the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See, e.g.*, *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 1973)).  Under this framework, "a plaintiff has the initial burden of establishing a prima facie case of discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  "If she does so, the burden then shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802).  Once the defendant provides such a reason, "the burden shifts back to the plaintiff to prove that the reason is pretextual." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

The Court assumes that Martinez has shown a prima facie case of age discrimination. *See, e.g.*, *Daniel v. Universal ENSCO, Inc.*, 507 F. App'x 434, 438 (5th Cir. 2013); *Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 433 (5th Cir. 1995).  The Court also finds, and Martinez concedes, that Walgreens has articulated a legitimate, nondiscriminatory reason for terminating her employment: her involvement in a workplace altercation with Greer on October 15, 2022, that Walgreens found to constitute gross misconduct under its workplace violence policy. *See* Mot. 14; Resp. 7; *see, e.g.*, *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022); *Ray*, 63 F.3d at 433, 435–36.

---

[2] The *McDonnell Douglas* framework applies whenever a TCHRA plaintiff relies on circumstantial, rather than direct, evidence to establish their discrimination claims. *Cnty. of El Paso v. Flores*, 677 S.W.3d 31, 42 (Tex. App. 2023) (citation omitted).  Martinez, who has submitted no direct evidence of discrimination, agrees that this standard applies here.  Resp. 2.

The burden thus shifts back to Martinez to demonstrate that Walgreens' proffered rationale is either pretext for age discrimination or the rationale, "while true, was only one reason for its conduct and discrimination is another motivating factor." *See Alviar v. Macy's, Inc.*, 784 F. App'x 213, 217 (5th Cir. 2019) (quotation omitted). "Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or 'unworthy of credence'—that it is 'not the real reason for the adverse employment action.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (citation omitted). The plaintiff must produce substantial evidence of pretext. *See Owens*, 33 F.4th at 826. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Id.* (citation omitted). A plaintiff's "subjective belief that [they have] been discriminated against, without more, cannot defeat summary judgment." *Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 345 (5th Cir. 2008).

### a.    Failure to Follow Internal Policies

First, Martinez argues that a jury could infer pretext from the fact that Walgreens failed to follow its own internal policies. Resp. 8–9. Specifically, Martinez claims that Walgreens had a "progressive discipline policy" which requires "that in 'most instances, a team member should not be terminated for a single misdeed or failure to work up to standard.'" *Id.* at 8. Walgreens then violated this policy, Martinez claims, by "immediately discharg[ing] [her], despite employing [her] for more than 28 years without any disciplinary issues until discharge." *Id.* Martinez also claims that her immediate termination was in violation of Walgreens' policy because she "engaged in no wrongdoing, much less any wrongdoing of gross misconduct or conduct that 'may be subject to disciplinary action, up to and including immediate termination . .

. including but not limited to possession of a weapon in the workplace, fighting, and threats or acts of violence[.]'" *Id.* at 9.

A failure to follow an internal policy can create an inference of pretext if the policy is specific and "followed in most circumstances." *See Quezada v. Earnhardt El Paso Motors, LP*, 592 F. Supp. 2d 915, 923 (W.D. Tex. 2009) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). But when a policy avoids guarantees and reserves discretion for the employer, a failure to follow the policy does not create an inference of pretext. *See, e.g.*, *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 391 (5th Cir. 2020); *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212–13 (5th Cir. 2018) (collecting cases). To establish an inference of pretext, then, a plaintiff must generally prove that an employer followed the policy in most circumstances or had a "de facto" policy of progressive discipline. *See Yanez v. Walgreen Co.*, No. 3:21-cv-73-DCG, 2022 WL 1409983, at *11–12 (W.D. Tex. May 4, 2022) (citations omitted); *see also Eyob*, 745 F. App'x at 212; *cf. also Taylor v. Peerless Indus. Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009).

Here, Walgreens' Standard of Conduct – Policy Statement reads:

> In most instances, a team member should not be terminated for a single misdeed or failure to work up to standard. However, team members observed to have serious or sustained performance that is below the standards communicated to the team member may be subject to progressive discipline, a performance improvement plan, or immediate termination. In addition, some misconduct may justify immediate termination of employment. A non-exhaustive list of examples of conduct for which team members may be subject to disciplinary action, up to and including immediate termination, is described below . . . Violation of Policy Against Workplace Violence (including but not limited to possession of a weapon in the workplace, fighting, and threats or acts of violence).

Policy 1. Although this policy mandates the use of progressive discipline and performance improvement plans "in most instances," it also permits the use of immediate termination for

"some misconduct," including violations of the workplace violence policy. *Id.* Thus, Walgreens' decision to forego progressive discipline and immediately terminate Martinez for her alleged violation of the workplace violence policy does not give rise to an inference of pretext because it was expressly allowed under Walgreens' policy.

In addition, Martinez does not provide evidence that Walgreens typically elected progressive discipline for violations of the workplace violence policy such that it had a de facto progressive discipline policy for those violations. In fact, the only evidence in the record of Walgreens' approach to other employees' violations of the workplace violence policy is its immediate termination of Greer for the same incident for which Martinez was immediately terminated. *See* Limon Statement 1; Villanueva Dep. 12:17–25, 13:1–3. This demonstrates that Walgreens' election of immediate termination over progressive discipline was consistent with its written policy and its general application of that policy to employees' violations of the workplace violence policy. Therefore, there is no inference of pretext. *See Salazar*, 982 F.3d at 391; *Eyob*, 745 F. App'x at 212–13.

As to Plaintiff's argument that her immediate termination was in violation of Walgreens' policy because she "engaged in no wrongdoing," *see* Resp. 9, courts generally do not "second guess" an employer's assessment as to whether an employee's conduct was sufficiently egregious to warrant immediate termination under a progressive discipline policy. *See Venable v. EnLink Midstream Operating, LP*, No. 18-cv-847, 2020 WL 853518, at *20 (M.D. La. Feb. 20, 2020) ("The Court is not permitted to second guess [the defendant's] evaluation of the egregiousness of Plaintiff's conduct in this regard."); *Kestler v. Motiva Enters., LLC*, No. 15-cv-1127, 2016 WL 852477, at *18 (E.D. La. Mar. 4, 2016) (same). Accordingly, the Court does not

14

second guess Walgreens' determination that Martinez's conduct violated its workplace violence policy.

> **b.** **Failure to Provide Contemporaneous Written Documentation and Shifting Explanations for Termination**

Next, Martinez argues that Walgreens' failure to issue "written documentation for its decision to discharge [her]" and its transformation of its "allegation of misconduct into an alleged violation of its workplace violence policy" are evidence of pretext. Resp. 9. This argument finds fault with the timing and contents of the statement produced by Martinez's manager, Limon, explaining the results of Walgreens' investigation and the reasons for her termination. *See* Limon Statement.

First, that statement was not prepared until after Martinez was fired. *Id.* An employer's "failure to produce 'contemporaneous written documentation'" provides an inference of discrimination only when there is evidence that an employer otherwise "abides by rigorous record-keeping policies." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 239–40 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. 2003)); *Evans*, 246 F.3d at 355. Where there is "a lack of contemporaneous documentation coupled with evidence that such documentation should exist," and the only evidence that does exist "was created after" the employee engaged in a protected activity and was terminated, this can constitute evidence of pretext. *See Burton*, 798 F.3d at 240–41; *Evans*, 246 F.3d at 355; *Burch v. Holcim US, Inc.*, No. 24-cv-1165, 2025 WL 721210, at *6 (E.D. La. Mar. 5, 2025).

Here, there is no evidence that it is Walgreens' policy to provide terminated employees with written documentation at the time of termination. Instead, the evidence in the record suggests that it is Walgreens' policy to handle disciplinary action through in person meetings with witnesses. *See* Limon Statement 1 ("Danny Dominguez, Store Manager, was instructed to

come in to serve only as a witness to follow through on the terminations of both Rachel Martinez and Abiny Greer."); Limon HR Report 2 ("Rachel Martinez, SFL, was in the office as well serving as a witness to the conversation."). As there is no evidence that Walgreens "abides by rigorous record-keeping policies," Martinez's claim that Walgreens failed to provide contemporaneous written documentation of the decision to fire her does not create an inference of pretext. *See Burton*, 798 F.3d at 239–40.

Second, Limon's written statement identified the reason for Martinez's termination as "Gross Misconduct[,] which is a violation of the Walgreens Code of Ethics and in violation of the Workplace Violence Policy." *See* Limon Statement. For his part, Villanueva testified that "[w]e decided to terminate Rachel Martinez because of the policy against workplace violence." Villanueva Dep. 12:17–25. And Martinez testified that she was informed that the reason for her termination was "gross misconduct." Martinez Dep. 95:20–21. "An employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002)). But the Court does not find Walgreens' use of "gross misconduct" and "violation of the workplace violence policy" interchangeably to describe Martinez's termination to be inconsistent, as it was Martinez's gross misconduct that amounted to a violation of the workplace violence policy. *Cf. Utley v. MCI, Inc.*, No. 05-cv-0046, 2008 WL 836419, at *43 (N.D. Tex. Mar. 24, 2008) (finding no inconsistency between employer's original proffered reason that there were "no open positions" and the proffered reason to the Court, a "failure to timely apply," because the latter "is simply another way of saying the position was already filled[.]"), *aff'd*, 320 F. App'x 250 (5th Cir. 2009).

Accordingly, nothing about the timing or contents of Limon's statement establishes pretext.

### c.    Alleged Age Discrimination Against Other Employees

Third, Martinez argues that she can show pretext through a "pattern and practice of age discrimination by Walgreens and Villanueva." Resp. 10. Martinez mentions two other employees who have filed lawsuits against Walgreens for age discrimination: Ruben Alba and Jesus Yanez. *See id.* Alba and Yanez "alleged that Villanueva discharged [them] motivated by [their] age." *Id.* She also points to Villanueva's testimony that employees, other than Martinez, had filed EEOC charges and lodged complaints against him for age discrimination. *Id.*; Villanueva Dep. 22:11–25, 23:1.

"An employee may use 'pattern or practice' evidence"—including anecdotal accounts of discrimination from other employees—"to prove pretext in an individual discrimination case." *Jiang v. Tex. Comm'n on Env't Quality*, No. 1:17-cv-739-RP, 2018 WL 8244906, at *1 (W.D. Tex. Sept. 19, 2018) (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (holding that "evidence of discrimination by other supervisors" is neither "*per se* admissible [nor] *per se* inadmissible" in federal age discrimination cases). But "[a]necdotal evidence is probative of a pattern or practice only if the employees are similarly situated to the plaintiff." *Jiang*, 2018 WL 8244906, at *1 (citing *Wyvill*, 212 F.3d at 302). "Similarity can turn on whether the other employees worked (a) under different supervisors or (b) in different departments than the plaintiff, (c) or whose adverse actions were removed in time." *Id.* (first citing *Wyvill*, 212 F.3d at 302; and then citing *Mendelsohn*, 552 U.S. at 388).

17

However, the mere fact that discrimination lawsuits were filed, without evidence of the "outcomes or judgments," is insufficient to demonstrate pretext. *Dorsey v. United Parcel Serv.*, No. 03-cv-920, 2004 WL 345488, at * 8 (N.D. Tex. Feb. 13, 2004); *cf. Madison v. Courtney*, No. 18-cv-671, 2019 WL 3801891, at *2 (N.D. Tex. Jan. 27, 2019) (excluding evidence of two informal discrimination complaints where "nothing more is known about the nature, merit, or outcome of those complaints"). As is a plaintiff's testimony of another employee's subjective belief that they were also discriminated against. *See Brockie v. Ameripath, Inc.*, No. 06-cv-185, 2007 WL 1187984, at *16 (N.D. Tex. Apr. 23, 2007) (finding plaintiff's statement that a female employee told her that she believed she was discriminated against on the basis of gender insufficient to establish pretext), *aff'd*, 273 F. App'x 375 (5th Cir. 2008).

As an initial matter, Martinez does not provide declarations or deposition testimony by either Alba or Yanez. Martinez attaches United States District Judge David Guaderrama's Order on the defendant Walgreens' motion for summary judgment in *Yanez*. *See* Resp. Ex. 1, *Yanez* Summ. J. Decision, ECF No. 22-2. As for Alba, Martinez states that "[f]rom review of the Court's file, it appeared as if Walgreens settled *Alba* before the Court decided Walgreens['] motion for summary judgment." Resp. 10. It is doubtful that the existence of these other lawsuits and Judge Guaderrama's summary judgment decision in one of them are competent summary judgment evidence. *Compare Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (holding district court properly declined to take judicial notice of findings of prima facie discrimination in related cases), *with Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 765 n.22 (S.D. Tex. 2010) (citations omitted) ("It is well settled that although Rule 56(e) expressly lists only affidavits, pleadings, depositions, answers to

interrogatories and admissions, a court may also consider certified transcripts of prior testimony in deciding a motion for summary judgment.").

However, even considering the two lawsuits as competent summary judgement evidence, the Court still finds that they are insufficient to establish a pattern and practice of discrimination by Villanueva. Although Yanez and Alba were terminated by Villanueva, they were terminated for the same incident for a violation of Walgreens' waste disposal policy, not its workplace violence policy, and they were terminated in 2020, two years before Martinez was terminated. *See Yanez*, 2022 WL 1409983, at *1–2. In addition, Martinez admits that Yanez and Ruben were working at a different store than Martinez when they were terminated. Martinez Dep. 134:8–11. Thus, because of the physical and temporal distance between Yanez and Alba's termination and Martinez's termination, as well as the difference in the misconduct for which they were terminated, Yanez and Alba were not similarly situated for purposes of evidencing a pattern and practice of discrimination. *See Jiang*, 2018 WL 8244906, at *1; *see also Arceneaux v. Metro. Life Ins. Co.*, 481 F. App'x 196, 198–99 (5th Cir. 2012) (finding employee who suffered adverse employment action two to three years before plaintiff too remote to be similarly situated); *cf. Perez v. Tex. Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004) (citation omitted) ("[I]n disparate treatment cases involving separate incidents of misconduct [we] have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'").

Accordingly, the terminations of Yanez and Alba do not establish a pattern or practice of age discrimination giving rise to an inference of pretext.

**d.    Termination Unreasonable Under the Evidence Presented**

Fourth, Martinez argues that her termination was unreasonable given the evidence presented to Villanueva. *See* Resp. 11. She claims that the evidence "demonstrated that Greer assaulted Plaintiff, that there was not a mutual altercation, and that Plaintiff did not engage in workplace violence nor violate policy." *Id.* Specifically, she claims that it was not reasonable for Walgreens to decide that both she and Greer violated Walgreens' policy based on (1) her written statement, (2) Alfonso Martinez's written statement stating that he only heard Greer's voice raised from the front cashier, (3) Limon's initial report to HR, which did not indicate Martinez's fault despite Limon speaking with Serrano on the phone prior to writing the report, (4) the untruthfulness of Serrano's statement, and (4) her lack of disciplinary history compared to Greer's disciplinary history. *See id.* at 11–16. Martinez disputes the veracity of Serrano's statement and claims that Serrano was in a romantic relationship with Greer at the time. *Id.* at 16.

Martinez also argues that Villanueva was biased in his investigation of the incident and his termination of Martinez. *Id.* at 17–18. Specifically, she claims that Villanueva failed to speak with each of the witnesses except for Serrano, deleted a voicemail from Greer stating she was quitting, and did not look at videos of the incident. *See id.*

"Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (citations omitted). However, "a dispute in the evidence concerning [employee's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the employer's] proffered justification is unworthy of credence." *See Eyob*, 745 F. App'x at 211–12 (citations omitted). "[A] plaintiff's summary judgment proof must consist of more than 'a mere refutation of the employer's legitimate

nondiscriminatory reason.'" *Jones*, 8 F.4th at 369. The central inquiry is "whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993). Whether an employer's investigatory choices "tend to permit a rational inference that the employer's ultimate reason for taking an adverse action is *unbelievable*," depends on the "nature, extent, and quality" of the evidence. *Owens*, 33 F.4th at 829.

A jury may well believe Martinez's version of the incident over Greer's. But there is no evidence to suggest that Villanueva had reason to disbelieve Serrano's statement as a third-party witness, which indicated that both Martinez and Greer were at fault. As Villanueva testified, he and Limon spoke to Serrano on the Monday morning after the incident because "she was the one that separated [Martinez and Greer]" and it was her statement that was able to reconcile Martinez and Greer's sides of the story—that each did nothing wrong and accused the other of being at fault. *See* Villanueva Dep. 18:5–19, 46:15–25. Although there is conflicting evidence of whether Serrano witnessed the entire or only part of the incident, this is immaterial to the reasonableness of Villanueva's reliance on Serrano's statement. *See id.* at 124:23–125:2; Serrano Statement; Limon HR Report 2. Even if Serrano only witnessed part of the incident and she witnessed both Greer and Martinez yelling and Martinez provoking Greer, this would establish a violation of the workplace violence policy by both Greer and Martinez, regardless of what occurred prior to her arrival in the hallway.

Martinez also disputes the veracity of Serrano's statement, testifying that she believed Serrano lied in her statement and that Villanueva and Limon knew this because Serrano was "obviously [] going to go for the company because she did have a lot of write-ups" and thus was "going to get on [Villanueva]'s side." *See id.* at 100:9–11, 101:10–23. She also testified that she

believed Serrano and Greer were in a romantic relationship. *See id.* at 107:13–23. Yet these

beliefs, based on unsubstantiated speculations, are not sufficient to raise a material issue of fact

as to whether Villanueva relied in good faith on Serrano's statement. *See Abrigo v. Hill Country

Tel. Coop.*, No. 5:17-cv-702-XR, 2018 WL 2728040, at *3, 6 (W.D. Tex. June 5, 2018) ("Mere

speculation, conclusory beliefs, or unsubstantiated assertions are not sufficient to establish that

an employee was discriminated against.") (citation omitted); *see also Inmon v. Mueller Copper

Tube Co.*, Inc., 757 F. App'x 376, 382 n.7 (5th Cir. 2019) (rejecting plaintiff's argument that

testimony of managers and employees corroborating her misconduct should be disregarded

because they are "interested witnesses").

Martinez also points to Limon's report to HR as evidence that Villanueva's decision was

unreasonable. Resp. 12–14. Specifically, she argues that this report, which only describes the

conduct of Greer and states that, "[a]cording to [Martinez], she did not say anything to [Greer]

except that she had been requested to be in the office with [Limon] as a witness," demonstrates

that Martinez was not at fault. *Id.*; Limon HR Report 2. Because this statement was written after

Limon spoke to Martinez, Alfonso Martinez, Serrano, and Villanueva, Martinez argues that this

proves that she was not at fault and thus it was unreasonable to terminate her. *See* Resp. 14.

Villanueva, however, testified that he did not recall seeing this statement and that he was

"surprised" by it because Limon had talked to Villanueva about both Greer and Martinez being

"unprofessional" with each other during the altercation. *See* Villanueva Dep. 46:12. Limon

testified that although Serrano had told him and Villanueva about Martinez's behavior, he

"failed" to include that in his report because he "had just opened the case" and "had not collected

employees' statements." *See* Limon Dep. 59:16, 60:1–2.

More importantly, Martinez's argument seizes on a statement that simply memorializes her own position about what happened—not Limon's objective assessment of the competing evidence. Limon HR Report 2 ("*According to [Martinez]*, she did not say anything . . .") (emphasis added). As discussed, Greer and Serrano both contradicted Martinez's version of events. And while a jury could perhaps credit Martinez, that is not dispositive. The controlling question is whether Villanueva's decision to disbelieve Martinez was taken in good faith. *See Waggoner*, 987 F.2d at 1165. And on that point, Martinez has not established a genuine dispute of fact. Simply put, Villanueva was not obligated to believe Martinez's side of the story when faced with competing versions of the facts.

Martinez also argues that Villanueva should have taken her lack of disciplinary history into account before terminating her for a violation of the workplace violence policy. *See* Resp. 14. Martinez's disciplinary history, however, is irrelevant to her violation of the workplace violence policy because it "does not address the specifics of her conduct that triggered the disciplinary measures." *See Inmon v. Mueller Copper Tube Co.*, Inc., 757 F. App'x 376, 382 (5th Cir. 2019). As discussed, unlike termination for poor performance or an extensive disciplinary history, termination for a violation of the workplace violence policy is based solely on the conduct triggering termination. Walgreens thus followed its policy in foregoing progressive discipline for immediate termination, even despite Martinez's clean disciplinary record.

As to Villanueva's decision to only speak to Limon and Serrano and otherwise rely on the written statements of Martinez, Greer, and Alfonso Martinez, while this may not have been "prudent," "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision." *See*

23

*Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005).  In addition, Villanueva

testified that he did not review videos of the incident because there were no videos to review, not

because he chose not to review them.  *See* Villanueva Dep. 63:23–24, 70:10–12.

Because Martinez does not raise a material issue of fact to impugn Villanueva's good

faith reliance on Serrano's statement to reconcile Martinez and Greer's competing versions of

events, she fails to establish pretext.  *See Waggoner*, 987 F.2d at 1165.

### e.     Disparate Treatment

Fifth, Martinez argues that a jury could infer pretext from the way Walgreens treated

Greer, who is thirty-two years old and not disabled.  *See* Resp. 16.  Martinez claims that

"Walgreens allowed Greer to quit" and then "asked [her] to return."  *Id.* at 17.  In contrast,

"Walgreens discharged Plaintiff."  *Id.* at 16.  This disparate treatment, Martinez argues,

demonstrates that Villanueva favored Greer—"the younger, not disabled employee."  *Id.*

To show discrimination through disparate treatment, a plaintiff must "identify [ ]

comparators and 'produce . . . evidence that they were similarly situated employees.'"  *Owens*,

33 F.4th at 827 (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th

Cir. 2001) (cleaned up)).  And a plaintiff is only similarly situated to other employees if their

"situation[s] [are] nearly identical."  *Okoye*, 245 F.3d at 514–15 (collecting cases).

Under this standard, Greer is a similarly situated employee to Martinez.  Although

Martinez was a shift lead and Greer was a beauty consultant, both worked at the same location

and were directly supervised by Limon and indirectly supervised by Villanueva.  *See* Villanueva

Dep. 9:10–12, 16:1–6; Limon Dep. 17:13, 21:11–13; *see also* Limon HR Report.  However,

Martinez fails to establish that she was treated differently than Greer in the adverse employment

action she challenges—her termination.  It is undisputed that both Martinez and Greer were

terminated for gross misconduct and violations of the workplace violence policy in connection with the same incident.[3]  Limon Statement 1; Villanueva Dep. 12:17–25, 13:1–3.  It is also undisputed that Greer quit and was allowed to return to her job prior to commencement and conclusion of the investigation of the incident.  *See* Limon HR Report 5; Limon Dep. 47:4–23; Villanueva Dep. 39:14–24.  There is, however, conflicting evidence as to exactly when and why Greer quit.  Limon's HR report indicates that Greer quit in relation to this incident, but Limon testified, as did Villanueva, that she quit in relation to feedback she received at a "BMH event" the previous weekend.  Limon Dep. 45:22–25, 46:1–2; Villanueva Dep. 38:21–25, 39:1–2.  In contrast, Martinez testified that Greer quit during the incident.  Martinez Dep. 113:20–21, 114:5–23.  These disputes, however, are immaterial.  Even assuming that Greer quit during and in relation to the incident, this does not change the fact that, after she was allowed to return and upon completion of the investigation, she was terminated, just like Martinez, for violation of the workplace violence policy.  *See* Limon Statement 1; Villanueva Dep. 12:17–25, 13:1–3.

Thus, Martinez fails to demonstrate that she was treated differently than a similarly situated person outside of the protected class.  *See Owens*, 33 F.4th at 827.

Because none of Martinez's evidentiary bases for pretext amounts to substantial evidence, Martinez has failed to create a genuine dispute on the issue of pretext.  *See Owens*, 33 F.4th at 826.  And Martinez's subjective belief that she was discriminated against because of her age, *see* Martinez Dep. 95:2–6, cannot save her claim, *see Garrett*, 299 F. App'x at 345.  In sum,

---

[3] Martinez disputes that she and Greer were terminated on the same day. Resp. 14.  However, even if Martinez's testimony that Greer was terminated the day before her was believed, *see* Martinez Dep. 122:16, it cuts against Martinez's argument that Greer was somehow given preferential treatment.

there is no evidence from which a reasonable jury could find that Villanueva's decision to terminate Martinez was motivated by discriminatory animus.[4]

As Martinez has failed to carry her burden at the pretext stage, Walgreens is entitled to summary judgment on Martinez's age discrimination claim.

### 2.    Disability Discrimination

Like her age discrimination claim, the Court analyzes Martinez's TCHRA disability discrimination claim under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas*, 411 U.S. 792; *see, e.g.*, *Ross*, 993 F.3d at 321. The Court again assumes that Martinez has shown a prima facie case of disability discrimination. *See, e.g.*, *Daniel*, 507 F. App'x at 438; *Ray*, 63 F.3d at 433. And finds that Walgreens has met its burden by articulating a legitimate, nondiscriminatory reason for terminating Martinez—her gross misconduct in connection with the altercation with Greer in violation of Walgreens' workplace violence policy. *See* Mot. 14; Resp. 7; *see, e.g.*, *Owens*, 33 F.4th at 826; *Ray*, 63 F.3d at 433, 435–36. Again, the burden shifts back to Martinez to demonstrate that Walgreens' proffered rationale is either pretext for disability discrimination or the rationale, while true, "was only one reason for its conduct and discrimination is another motivating factor." *See Alviar*, 784 F. App'x at 217.

Martinez relies entirely on her pretext arguments for her age discrimination claim to demonstrate that Walgreens' reason for terminating her was pretext for disability discrimination. Resp. 6. As discussed above, none of Martinez's evidentiary bases for pretext—failure to follow internal policies and contemporaneous written documentation, shifting explanations, alleged age discrimination against other employees, unreasonableness of termination under the evidence

---

[4] Martinez does not argue mixed-motive—that gross misconduct "was only one reason" for her termination and discrimination was "another motivating factor." *See Alviar v. Macy's, Inc.*, 784 F. App'x 213, 217 (5th Cir. 2019). However, even if she did, because the Court finds there is no evidence of discriminatory animus, Martinez is also unable to succeed on a mixed-motive theory.

presented, and disparate treatment—amount to substantial evidence sufficient to create a dispute of material fact. *See Owens*, 33 F.4th at 826.

Although not raised in her arguments on pretext, but instead in her arguments on her prima facie disability discrimination case, Martinez relies on two additional evidentiary bases to argue that she was terminated because of her disability. First, evidence showing that about one month prior to her discharge Martinez requested that she not be transferred to a different store to work overnight shifts because of her disability. *See* Resp. 5. Second, evidence showing that she was terminated because of the incident which involved Greer "yelling at Plaintiff that she was a bipolar bitch and Greer telling Plaintiff to take her meds." *See id.*

As to the first basis, "a failure to reasonably accommodate . . . may imply intentional discrimination." *Pinchback v. Leon-Gomez*, No. 15-cv-805, 2017 WL 5634636, at *5 (E.D. Tex. Mar. 22, 2017) (citing *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2015)). To demonstrate a failure to accommodate, a plaintiff must establish that "'(1) [she] is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.'" *Demarce v. Robinson Prop. Grp.*, 642 F. App'x 348, 354 (5th Cir. 2016) (quoting *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013)); *see also El Paso Cnty.. Water Improvement Dist. No. 1 v. Trevizo*, 697 S.W.3d 259, 275–76 (Tex. App. 2023) (citing *Hagood v. El Paso Cnty.*, 408 S.W.3d 515, 524 (Tex. App. 2013) (listing similar elements for failure-to-accommodate claims under the TCHRA)).

The parties dispute whether Martinez's request that she not be transferred to work overnight shifts constitutes a request for a reasonable accommodation. *See* Resp. 5, 19; Mot. 9; Reply 4. However, even assuming that it does, the evidence presented demonstrates that

27

Walgreens granted Martinez's request. Martinez testified that she was never transferred to a twenty-four-hour store and never required to work an overnight shift. Martinez Dep. 79:1–16, 81:7–11. Thus, she cannot demonstrate that her request for a reasonable accommodation was denied. *See Eubank v. Lockhart Indep. Sch. Dist.*, 229 F. Supp. 3d 552, 560–61 (W.D. Tex. 2017) (granting summary judgment on ADA and TCHRA failure-to-accommodate claims where Plaintiff received requested accommodation), *aff'd*, 734 F. App'x 295 (5th Cir. 2018). Accordingly, this evidentiary basis fails to demonstrate pretext.

As to the second basis, statements that evince discriminatory animus can be used to show pretext for discrimination. *See, e.g.*, *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 477 (5th Cir. 2015) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 n.9 (5th Cir. 2000)); *Gardea v. DialAmerica Mktg., Inc.*, No. 3:12-cv-158-KC, 2013 WL 1855794, at *16 (W.D. Tex. Apr. 30, 2013) (collecting cases). But where, as here, the Court has "considered the remainder of [the plaintiff's] proffer and found it insufficient," such that the plaintiff "failed to produce substantial evidence of pretext outside of the comments," the Court applies a four-part test to determine whether those comments are probative of discriminatory intent. *Ray v. United Parcel Serv.*, 587 F. App'x 182, 196 (5th Cir. 2014). Under this test, a comment can only show pretext if it is "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Id.* at 196 n.82 (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (cleaned up)).

Here, during the incident that led to Martinez's termination, Greer called her a "bipolar bitch" and told her to "take her meds." *See* Martinez Dep. 98:4–7; Mot. Ex. I, Written Statement

Rachel Martinez ("Martinez Statement"), ECF No. 21-10. Although a reasonable juror could find that Greer's comments evince discriminatory animus, Greer did not have authority over the decision to terminate Martinez. Greer's position at Walgreens was beauty consultant, a lower position than Martinez's position of shift lead. *See* Villanueva Dep. 16:1–6; Limon Dep. 28:7–9, Limon HR Report. Villanueva made the decision to terminate Martinez and there is no evidence showing that Greer influenced that decision. Indeed, Villanueva specifically testified that he did not speak to Greer before he recommended Martinez's termination. Villanueva Dep. 15:18–20. Therefore, Greer's comments cannot show pretext. *See Eaglin v. Tex. Child.'s Hosp.*, 801 F. App'x 250, 255–56 (5th Cir. 2020) (finding comments made by persons without authority to terminate the plaintiff to be stray remarks insufficient to defeat summary judgment).

Accordingly, neither evidentiary basis amounts to substantial evidence of pretext that would raise a material issue of fact as to Martinez's disability discrimination claim. And Martinez's subjective belief that she was discriminated against because of her disability, *see* Martinez Dep. 139:1–12, cannot defeat summary judgment, *see Garrett*, 299 F. App'x at 345. Summary judgement is thus warranted in Walgreens' favor.

### 3.    Retaliation

Like her discrimination claims, the Court analyzes Martinez's retaliation claim under the *McDonnell Douglas* burden-shifting framework, *see McDonnell Douglas*, 411 U.S. 792, assumes that Martinez has met her prima facie case, *see Daniel*, 507 F. App'x at 438, and that Walgreens has met its burden to provide a legitimate, nonretaliatory reason for her termination, *see Owens*, 33 F.4th at 826. The burden thus shifts back to Martinez to demonstrate that Walgreens' proffered rationale was pretext for retaliation and that retaliation was the "but-for cause" of her termination. *Apache Corp. v. Davis*, 627 S.W.3d 324, 335 (Tex. 2021); *accord Pineda v. United*

*Parcel Serv., Inc.*, 360 F.3d 483, 487–88 (5th Cir. 2004); *Johnson v. Epsilon Data Mgmt., LLC*, No. 23-cv-1016, 2024 WL 5240151, at *7 (N.D. Tex. Dec. 27, 2024).

Martinez does not differentiate between her discrimination and retaliation claims; she appears to argue that each of her arguments can show pretext for all of her claims. *See* Resp. 6, 19. But discrimination and retaliation claims are governed by divergent standards of causation. A retaliation claim requires the retaliatory motive to be the "but-for" cause of the adverse employment action, whereas a discrimination claim only requires discriminatory animus to be a "motivating factor" behind the adverse action. *Compare Davis*, 627 S.W.3d at 335 *with Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

As discussed above, Martinez's proffered evidence of pretext for her discrimination claims fails to raise a genuine dispute of material fact. Under the more stringent "but-for" causation standard, this evidence also fails to defeat summary judgment on her retaliation claim. To the extent Martinez relies on the one-month temporal proximity between her request that she not be transferred to work overnight shifts and her termination, *see* Resp. 18–19, as additional evidence of pretext, this is insufficient. At the pretext stage, "temporal proximity alone is insufficient to prove but for causation." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (quoting *Strong*, 482 F.3d at 808). Only "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Id.* (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). As Martinez has failed to provide any evidence of pretext, let alone significant evidence of pretext, any temporal proximity between her termination and her request not to be transferred fails to raise a material issue of fact. *See id.*

30

Therefore, Walgreens is also entitled to summary judgment on Martinez's retaliation claim.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion, ECF No. 21, is **GRANTED**.  All of Martinez's claims are **DISMISSED** with prejudice.

**SO ORDERED.**

SIGNED this 21st day of October, 2025.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE